IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WARREN BUZEK, | ) | 4:05CV3214 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| PAWNEE COUNTY and | ) | |
| PAWNEE COUNTY BOARD, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Warren Buzek, claims that he was not interviewed or hired for an interim position as the Sheriff of Pawnee County, Nebraska, because (1) he is male; (2) he was perceived to have a physical disability; and (3) he previously filed discrimination charges against Pawnee County. The defendants, Pawnee County and Pawnee County Board, have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. After careful consideration of the pleadings, briefs, and evidence, I conclude that the defendants' motion (filing 22) should be granted.

## I. INTRODUCTION

In compliance with our local rules, the defendants have "set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). The defendants' statement of material facts consists of 17 numbered paragraphs that each contain appropriate references to the record. See NECivR 56(a)(2).

Buzek has failed to respond the defendant's statement of material facts in the manner required by NECivR 56.1(b)(1) ("The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain

pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies."), but has instead supplied his own "statement of disputed facts" in 9 numbered paragraphs that do not correspond to the defendants' statement. "<u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.</u>" NECivR 56.1(b)(1) (emphasis in original). Although not required to do so,[1] I will consider whether Buzek's "statement of disputed facts" effectively controverts the defendants' statement of material facts. Before doing so, however, I must decide a motion to strike (filing 30) that Buzek has filed regarding portions of affidavits, Defendants' Exhibits 1, 2, and 3 (filings 24-2, 24-3, and 24-4, respectively), submitted by the three members of the Pawnee County Board.

### A. *Plaintiff's Motion to Strike*

The three Board members have submitted substantially similar, 11-paragraph affidavits, and Buzek has moved to strike all but two paragraphs from each affidavit. My rulings on Buzek's stated objections are as follows:

1. No objection is made to paragraph 1 of each affidavit.
2. Buzek's hearsay and foundational objections to paragraph 2 of each affidavit are sustained, except as to the first two sentences.
3. Buzek's objections to paragraph 3 of Gordon Clement's affidavit are overruled.

---

[1] See <u>Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank</u>, 354 F.3d 721, 725 (8th Cir. 2003) (district courts are not obliged to scour the record and may adopt local rules designed to streamline the resolution of summary judgment motions). See also <u>Cordray v. 135-80 Travel Plaza, Inc.</u>, 356 F. Supp. 2d 1011, 1014-15 (D. Neb. 2005) (granting summary judgment based in part on plaintiff's failure to address each numbered paragraph of defendant's statement of material facts).

4. Buzek's foundational objections to paragraph 4 of the affidavits of Robert Stevens and Kay Laun are sustained with respect to the second, third, fourth, and fifth sentences only (beginning with "The outgoing sheriff . . ." and ending with ". . . employed by Johnson County."). The same sentences appearing in Gordon Clement's affidavit will also be stricken, even though no objection has been made to them. It is also understood that the following statements are not offered to prove the truth of the matter asserted by third parties, or for which no proper foundation has been laid, but merely to show what information each Board member claims to have acted upon: (a) Mr. Clement's statement that "I had received complaints from members of the community and other Pawnee County employees that they found it difficult to work with Plaintiff Warren Buzek when he was employed as a deputy sheriff. (b) Mr. Stephens statement that "I knew that other Pawnee County employees complained about Plaintiff and found him difficult to get along with. (c) Ms. Laun's statement that "I did not believe Mr. Buzek was qualified to be Pawnee County Sheriff because he was fired by the outgoing sheriff and was not able to get along with Johnson County dispatchers who provided dispatching service in Pawnee County."

5. Buzek's foundational objections to paragraph 5 of each affidavit are sustained with respect to the last sentence only.

6. Buzek's foundational objections to paragraph 6 of each affidavit are sustained with respect to the last sentence only.

7. Buzek's objections to paragraph 7 of each affidavit are overruled, with the understanding that the last sentence in each paragraph is not offered to establish the truth of the matter asserted.

8. Buzek's foundational objections to paragraph 8 of each affidavit are sustained with respect to the fifth and sixth sentences (beginning with "The County Board decided . . ." and ending with ". . . no transition time."); the second part of the compound seventh sentence, beginning

>with the conjunctive "and"; and the last sentence. It is also understood that the ninth sentence in each paragraph ("Ms. Reed's gender was not a factor in deciding to hire her as an interim county sheriff.") relates only to each affiant's decision, not to the Board's decision.
>
>9. Buzek's foundational objections to paragraph 9 of each affidavit are sustained with respect to the last sentence only.
>10. Buzek's objections to paragraph 10 of each affidavit are overruled.
>11. Buzek's objections to paragraph 11 of each affidavit are overruled.

Any objections not expressly sustained above are overruled. Buzek's motion to strike will be granted with respect to the objections that have been sustained, but in all other respects the motion will be denied.

### *B. Defendants' Statement of Material Facts*

Based upon the foregoing evidentiary rulings, and after either eliminating or qualifying other statements of fact that are not fully supported by the record, the defendants' statement of material facts is limited to the following:

>1. In April of 2004, the Pawnee County Board of Commissioners began the process of interviewing candidates and hiring an individual to serve as interim Pawnee County Sheriff. The Sheriff, Mr. Robert Hickey, was retiring and it was the county board's responsibility to find someone to serve as interim sheriff until the next general election. (Clement Affidavit, Ex. 1, ¶ 1; Laun Affidavit, Ex. 2, ¶1; Stephens Affidavit, Ex. 1, ¶ 1).
>
>2. Plaintiff Warren Buzek was one of thirteen applicants for the job. . . . (Clement Affidavit, Ex. 1, ¶ 2; Laun Affidavit, Ex. 2, ¶ 2; Stephens Affidavit, Ex. 3, ¶ 2).
>
>3. The County Board chose four people to interview for the interim job. Plaintiff was not chosen for an interview. The group of

4

four candidates included one female and three male candidates. (Clement Affidavit, Ex. 1, ¶ 3; Laun Affidavit, Ex. 2, ¶ 3; Stephens Affidavit, Ex. 3, ¶ 3).

\* \* \*

5. County Commissioner Gordon Clement had received complaints from members of the community and other Pawnee County employees that they found it difficult to work with Plaintiff Buzek when he was employed as a deputy sheriff. Mr. Clement did not want to interview or hire someone for the interim sheriff job who could not get along with other employees in the county or who did not have the public trust. (Clement Affidavit, Ex. 1, ¶ 4)

6. Ms. Kay Laun did not believe Plaintiff was qualified to serve as interim county sheriff because [she heard that] he was fired by the outgoing sheriff and was not able to get along with the dispatchers who were contracted to provide dispatching to the county. (Laun Affidavit, Ex. 2, ¶ 4)

7. Mr. Robert Stephens did not believe Plaintiff was qualified because when he worked as a road grader operator with Pawnee County before becoming a county commissioner, he knew other Pawnee County employees complained about Plaintiff and found him difficult to get along with. Mr. Stephens did not want to interview or hire someone for the interim sheriff job who could not get along with other employees in the county. (Stephens Affidavit, Ex. 3, ¶ 4).

\* \* \*

9. Three of the four applicants interviewed for the interim sheriff's job were males. The County Board first voted to hire Michael Hutchinson, a male applicant, . . . . (Clement Affidavit, Ex. 1, ¶ 6; Laun Affidavit, Ex. 2, ¶ 6; Stephens Affidavit, Ex. 3, ¶ 6). After Mr. Hutchinson was offered the job, he informed the County Board that he would not be able to [accept] the job due to . . . obligations he had to his family. (Clement Affidavit, Ex. 1, ¶ 7; Laun Affidavit, Ex. 2, ¶ 7; Stephens Affidavit, Ex. 3, ¶ 7).

10. After Mr. Hutchinson turned down the job, the County Board offered the job to Ms. Jayme Reed, a female applicant. Ms. Reed was already working as a deputy sheriff at the Pawnee County Sheriff's Office at the time. The outgoing sheriff, Mr. Robert Hickey, had recommended Ms. Reed for the job. The County Board confirmed that she was a certified law enforcement officer in good standing before offering the job to her. . . . Ms. Reed's gender was not a factor [for any Board member] in deciding to hire her as interim county sheriff. (Clement Affidavit, Ex. 1, ¶ 8; Laun Affidavit, Ex. 2, ¶ 8; Stephens Affidavit, Ex. 3, ¶ 8).

11. With regard to Plaintiff's claims of disability discrimination because of an old shoulder injury, Defendants deny they perceived Plaintiff as disabled or considered his alleged disability when deciding who to hire for the interim sheriff job. Mr. Gordon Clement had a vague memory that Plaintiff had complained of an injury years before when Plaintiff worked as a deputy sheriff. The matter was handled by the county's workers compensation carrier. No additional information about the injury or disability was available to Mr. Clement [when he] was considering hiring for the interim county sheriff's job. Plaintiff did not report a disability to the county board and Mr. Clement did not consider Plaintiff to be disabled. Mr. Clement did not consider any alleged disability claimed by Plaintiff's Complaint when deciding not to interview or hire Plaintiff for the interim sheriff job. (Clement Affidavit, Ex. 1, ¶ 9).

12. Ms. Laun did not become a county commissioner until January of 2003. She had no personal knowledge of any disability that Plaintiff claims in his Complaint. She had become aware through hearsay that Plaintiff had previously received workers compensation benefits from the county's workers compensation carrier because of a shoulder injury. The matter was handled by the county's workers compensation carrier and details were not available to Ms. Laun. Ms. Laun did not consider Plaintiff to have a disability. Plaintiff never told Ms. Laun that he was disabled or impaired in any way. (Laun Affidavit, Ex. 2, ¶ 9).

  13. Mr. Stephens did not become a county commissioner until January of 2003 and he had no knowledge of any shoulder injury or disability Plaintiff claims in his Complaint. Mr. Stephens did not consider Plaintiff to have a disability. (Stephens Affidavit, Ex. 3, ¶ 10).

  14. Mr. Clement denies that he retaliated against Plaintiff for a previous complaint Plaintiff filed. Mr. Clement was aware of the complaint, but he did not consider any past grievance or complaint that Plaintiff filed when he decided not to interview or hire Plaintiff. Mr. Clement knew that the matter had been resolved by the county and he had no reason to retaliate against Mr. Buzek. (Clement Affidavit, Ex. 1, ¶ 10).

  15. Ms. Laun did not become a county commissioner until January of 2003. She was not directly involved with any previous complaint or claim filed in the past. She was not a party to any previous claim or accusations that Plaintiff made. She had no reason to retaliate and did not retaliate against Mr. Buzek. (Laun Affidavit, Ex. 2, ¶ 10).

  16. Mr. Stephens did not become a county commissioner until January of 2003. He had no personal knowledge or records pertaining to any claim Plaintiff made have filed in the past. Mr. Stephens did not consider any past grievance or complaint Plaintiff made have filed when he decided not to interview or hire Plaintiff. Mr. Stephens lacked information about the claim and had no reason to retaliate against Plaintiff. (Stephens Affidavit, Ex. 3, ¶ 10).

  17. [Mr. Clement, Mr. Stephens, and Ms. Laun each voted] . . . to hire Ms. Reed for the interim county sheriff job after Mr. Hutchinson turned down the job because they believed she was the most qualified and because she was recommended by the outgoing sheriff. (Clement Affidavit, Ex. 1, ¶ 11; Laun Affidavit, Ex. 2, ¶ 11; Stephens Affidavit, Ex. 3, ¶ 11).

(Filing 23, at 2-8.)

### C. *Plaintiff's Statement of Disputed Facts*

Buzek first claims that "[t]he facts show that Defendants commenced looking for a Sheriff to replace Sheriff Hickey before April of 2004 as evidence[d] by Exhibit 3 to the Warren Buzek affidavit which indicates that the application are due by March 29, 2004 by 4:00 p.m." (Filing 27, at 1.) I accept this fact as true, but it does not affect the defendants' statement that interviews commenced in April of 2004. In fact, the referenced exhibit states that interviews would start on April 13, 2004.

Second, Buzek states that:

> The facts show plaintiff was terminated from employment by Sheriff Hickey after being asked to resign and refusing. (Buzek Affidavit ¶ 3) Plaintiff further states that Exhibit 2 of Buzek's affidavit shows an interview of Sheriff Hickey admitting that he had been convicted of DUI on three occasions and the plaintiff being interviewed as to what he thought of said hiring. (Buzek Affidavit ¶ 7) Plaintiff further states that when he was terminated by Sheriff Hickey he received a letter of recommendation. (Buzek Affidavit ¶ 5 and Exhibit 1 of said Affidavit)

(Filing 27, at 1-2.) Again, this statement does not refute the defendants' evidence. However, it does establish that Buzek was fired by the outgoing sheriff, and the documents contained in Exhibit 1 show this occurred on March 28, 2001.

Buzek next states that "[t]he facts show that there were no reports of improper behavior made known to him or that in fact had any effect on the defendants. (Buzek Affidavit ¶ 3,11) (Baldridge Affidavit ¶ 3) (Exhibit 8 of Buzek Affidavit)". (Filing 27, at 2.) Obviously, Buzek cannot know that "there were no reports of improper behavior . . . that in fact had any effect on the defendants." Buzek's evidence only shows that "to his knowledge he did not receive any complaints from citizens or the defendants that he was aware of prior to this lawsuit" (filing 28-1, at 4, ¶ 11), and that Mr. Baldridge, "while . . . Sheriff of Pawnee County . . . received no complaints about

8

the performance of Warren Buzek from any citizen of Pawnee County or from the Board." (Filing 28-17, at 1, ¶ 3.)

Fourth, Buzek states:

> The facts show plaintiff was highly qualified to be Sheriff as evidenced by Buzek Affidavit Exhibit 10 which includes the plaintiff's application. Plaintiff also contends that the statements of his performance are pretextual as no complaints were received or made known to the plaintiff during his employment. (Buzek Affidavit ¶ 3 and Baldridge Affidavit ¶ 3) (Exhibit 8 of Buzek Affidavit)

(Filing 27, at 2.) Defendants do not dispute Buzek's employment qualifications. As before, Buzek's evidence only shows that he was not aware of any complaints. Exhibit 8 is an unauthenticated videotape of an April 10, 2001 grievance hearing that a former county board held in response to a complaint filed by Buzek when he was not appointed to succeed Sheriff Baldridge. Mr. Clement states in response to questioning by Buzek that there were no official complaints lodged against Buzek that had not been discussed with him, but that there had been unofficial complaints that were not acted upon.

Fifth, Buzek states, incompletely, that "[t]he facts show that the matter involving Johnson County is a pretextual reason based on (Buzek Affidavit ¶ 10; Baldridge Affidavit ¶ 4) (Exhibits 6 & 7 of Buzek Affidavit)". (Filing 27, at 2.) This evidence presumably relates to Ms. Laun's statement that she heard Buzek "was not able to get along with Johnson County dispatchers who provided dispatching service in Pawnee County." Buzek's evidence shows that Sheriff Baldridge had problems with the Johnson County dispatchers before Buzek was hired. Buzek has also provided a copy of a memo that he sent to the Nebraska State Patrol and others detailing his problems with the dispatchers and his encounters with the Johnson County Sheriff and Johnson County Attorney when he tried to complain.

For his sixth "disputed fact," Buzek states that "[t]he facts show that the defendants knew the plaintiff had been injured because the injury happened while he was employed by the defendants. (Buzek Affidavit ¶ 2, 12)". (Filing 27, at 2.) Defendants do not deny that Buzek suffered a job-related injury.

Seventh, Buzek states that "[t]he facts show that plaintiff's termination by Sheriff Hickey was improper because the rules in effect at the time of termination required a different procedure then used by Hickey. (Buzek Affidavit ¶ 6)". (Filing 27, at 2.) Whether the termination of Buzek's employment as a deputy sheriff was procedurally proper is not at issue in this case.

Eighth, Buzek states:

> The facts show that plaintiff was more qualified than Jayme Reed and that Jayme Reed was given special treatment in the application process by not having to accurately fill out her application, to not disclose her termination of employment from the Sheriff's Office, and by not having to comply with the applications instructions as the other male candidates had to do. (Buzek Affidavit ¶ 8, 9 and Exhibits 3, 4, 5) (Baldridge Affidavit ¶ 5, 6, 7, 8)

(Filing 27, at 2-3.) Mr. Baldridge, who served as Pawnee County Sheriff from February 1998 until he was recalled in January 2001, states that he fired Ms. Reed at an undisclosed date. Her application shows that she worked at the Pawnee County Sheriff's Department as an office deputy between 1997 and 2000, and as an office deputy/investigator between June 14, 2001, and 2004. (Filing 28-4, at 6.) Buzek complains that Ms. Reed did not disclose that she was fired by Mr. Baldridge. His other complaints are that Ms. Reed's application did not provide the Board with telephone numbers and the names of supervisors for some former employees, or certification of law enforcement training.

10

Ninth, and finally, Buzek states that "[t]he facts show that Jayme Reed a female candidate was given special treatment by the defendants when applying for the position of sheriff of Pawnee County. (Buzek Affidavit ¶ 13,14, 15)(Exhibit 9 of Buzek Affidavit)". (Filing 27, at 3.) No other specifics are given.

### D. *Plaintiff's Claims*

Buzek alleges in his complaint that "[t]his action is brought pursuant to 42 U.S.C. § 2000e-2 and 28 U.S.C. § 1331." (Filing 1, at 1.) Section 2000e-2 is part of Title VII of the Civil Rights Act of 1964, as amended, while § 1331 is simply a jurisdictional statute ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Title VII declares that "[i]t shall be an unlawful employment practice for an employer . . . to fail . . . to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Buzek's disability discrimination claim is not actionable under Title VII, but it may be brought under the Americans with Disabilities Act ("ADA"), which makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . hiring[.]" 42 U.S.C. § 12112(a).

With respect to his retaliation claim, Buzek alleges that he "filed a previous complaint against the defendants Pawnee County and Pawnee County Board that can be found at Neb 1-00/01-5-30343-R; 32EA105867 and NEB 1-01/02-9-30780." (Filing 1, at 3.) The nature of that previous complaint is nowhere described, nor has the court been provided with any documentation. Buzek only states that "prior to March 2004 . . . [he] filed a complaint alleging that the defendants had discriminated against him[.]" (Filing 1, at 4.) The parties' final pretrial conference order specifies that the retaliation claim arises under Title VII,[2] but otherwise merely reiterates that

---

[2] The parties' report of their Rule 26(f) planning conference also specifies that this is a "Title VII retaliation" claim. (Filing 10, at 3.)

11

Buzek claims he was retaliated against for "filing a previous complaint against Defendants which can be found at Neb 1-00/01-5-30343-R; 32EA105867 and NEB 1-01/02-9-30780." (Id.) These numbers presumably reference discrimination charges filed with the Nebraska Equal Opportunity Commission and the United States Equal Employment Opportunity Commission, but documents filed with those agencies are not publicly available.[3]

## *II. DISCUSSION*

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir.1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla

---

[3] I have independent knowledge that Buzek filed a § 1983 action in this court on December 3, 2001, against Pawnee County and individual members of the board of county commissioners, Case No. 4:01CV3308, in which he asserted various constitutional claims related to the termination of his employment as a deputy sheriff. That lawsuit did not involve any Title VII claim, however.

12

of evidence is insufficient to avoid summary judgment." Id. Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.

Summary judgment is disfavored in employment discrimination cases, as such cases are "inherently fact-based." Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir.2003) (quoting Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir.1999)). Nonetheless, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of his case. Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005).

13

Because Buzek has not presented any direct evidence of discrimination or retaliation, his claims will be analyzed using the familiar three-step, burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973). Applying this framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. at 802. The prima facie case raises a legal presumption of discrimination in the plaintiff's favor, requiring the defendant to articulate a legitimate, nondiscriminatory reason for its action. Id.; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff then has the opportunity to demonstrate that the defendant's proffered reasons are in fact a mere pretext for discrimination. Burdine, 450 U.S. at 253; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516-17 (1993) (clarifying that a plaintiff must show that the employer's proffer is a pretext for unlawful discrimination, not that it is merely false in some way). The evidence supporting the plaintiff's prima facie case may suffice to discredit the defendant's explanation, and the plaintiff is not required in all cases to introduce additional evidence to meet the burden of proof. Burdine, 450 U.S. at 255 n. 10; Haglof v. Northwest Rehab., Inc., 910 F.2d 492, 494 (8th Cir.1990). The ultimate burden of proving discrimination remains with the plaintiff at all times. Hicks, 509 U.S. at 518.

As a preliminary matter, the defendants argue that the Pawnee County Board is not a proper party to this action because it is not a suable entity under Nebraska law. Buzek has made no response to this argument. Upon review of the applicable statutes and case law, I conclude that the defendants are correct. Each county in Nebraska is "a body politic and corporate" that "may sue and be sued" in its own name. Neb. Rev. Stat. Ann. § 23-101 (Lexis 1999). "The powers of the county as a body corporate and politic, shall be exercised by a county board," Neb. Rev. Stat. Ann. § 23-103 (Lexis 1999), but the county board does not have a separate legal existence and is not capable itself of suing or being sued. See Jameson v. Plischke, 165 N.W.2d 373, 376 (Neb. 1969) (county board not a proper party). The action against the Pawnee County Board therefore will be dismissed. See Meyer v. Lincoln

14

Police Dept., 347 F. Supp. 2d 706 (D. Neb. 2004) (city police department not subject to suit); Bruhn v. Foley, 824 F. Supp. 1345, 1351 n. 16 (D. Neb. 1993) (county weed board not capable of suing or being sued).

### A. Sex Discrimination

To establish a prima facie case of sex discrimination under Title VII, Buzek must show that (1) he belongs to a protected class; (2) he applied and was qualified for a job with Pawnee County; (3) he was rejected despite his qualifications; and (4) Pawnee County hired a woman. See Woods v. Perry, 375 F.3d 671, 673-74 (8th Cir. 2004). In reverse discrimination cases, the plaintiff has also been expected to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." Id. (quoting Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997)). Buzek could show suspicious background circumstances by showing evidence that Pawnee County is inclined to discriminate invidiously against males or something "fishy" about the facts that raises an inference of discrimination. Id. (citing Harding v. Gray, 9 F.3d 150, 153 (D.C. Cir.1993)).

The only suspicious circumstances identified by Buzek are that he was more qualified for the job than Ms. Reed and that she failed to complete her application in the prescribed manner. It cannot reasonably be inferred from these two factors alone that Buzek was a victim of gender-based discrimination.[4]

---

[4] That two out of three board members are male, and that Ms. Reed was not the board's first choice for the sheriff's job, also strongly suggest that Pawnee County is not an "unusual employer." Although not mentioned in his brief, Buzek states in his affidavit that "he has attended all the public Pawnee County Board meetings between March 29, 2004 and the hiring of Jayme Reed . . . and did not once hear a motion or discussion of the defendants to hire anyone other than Jayme Reed . . .." (Filing 28-1, ¶ 15.) This evidence places in doubt whether the board voted to hire Mr. Hutchison before Ms. Reed, but it does not tend to prove unlawful discrimination.

### B. *Disability Discrimination*

As a threshold matter, Buzek must produce sufficient evidence to demonstrate that he has a disability within the meaning of the ADA. Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir.1996) ("The threshold requirement for coverage under the ADA is that the plaintiff be a 'qualified individual with a disability.'"). The ADA provides several definitions for disability,[5] but Buzek only claims that Pawnee County "perceived him as disabled" (Filing 1, at 5) and, in this regard, merely alleges that he "had been injured on the job and all of the defendants were aware of the injury." (Filing 1, at 2.) Buzek's brief does not shed any further light on this claim, but Buzek states in his affidavit that he "injured himself on or about January 20, 2001 while Deputy Sheriff for Pawnee County, Nebraska." (Filing 28-1, ¶ 2.) Specifically,

> [Buzek] states that he hurt his shoulder, lower back, hip and neck. [He] received Temporary Total Disability from the Nebraska Worker [sic] Compensation Court. [Buzek] was released by his doctors to go back to work and the matter was settled.

(Id.)

"Perceived" or "regarded as" disability can occur in two ways: (1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an actual impairment substantially limits one or more major life activity. Wenzel v.

---

[5] The ADA defines "disability" to mean, with respect to an individual:

   (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
   (B) a record of such an impairment; or
   (C) being regarded as having such an impairment.

42 U.S.C.A. § 12102(2) (West 2005).

16

Missouri-American Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005). Buzek has not shown that either situation exists in this case. He has only shown that Pawnee County knew that he was temporarily disabled for an unspecified period between January 20, 2001, when he was injured, and March 28, 2001, when he was fired. This evidence obviously is insufficient to create a jury question. See, e.g., Genthe v. Lincoln 383 F.3d 713, 717-18 (8th Cir. 2004) (as a matter of law, plaintiff was not regarded as disabled when he was passed over for promotion by decision makers who knew that he had a heart problem, that he at times had lifting and overtime accommodations, and that his vision had been questioned by a co-worker), cert denied, 544 U.S. 949 (2005); Simonson v. Trinity Regional Health System, 336 F.3d 706, 709 (8th Cir. 2003) (hospital's awareness of nurse's past medical problems did not establish that it regarded her as disabled); Conant v. City of Hibbing, 271 F.3d 782, 785-86 (8th Cir. 2001) (city's letter rescinding employment offer because of plaintiff's back condition only showed that the city regarded him as being unable to perform this particular job, not that it perceived him as having an impairment that significantly restricted his ability to perform the major life activity of working).

### *C. Retaliation*

While the parties have stipulated that the retaliation claim is brought under Title VII, nothing else is known about the claim. Pawnee County does not argue that Buzek is unable to prove a prima facie case of retaliation. Rather, its lone argument is that there were "legitimate, non-discriminatory reasons for not interviewing or hiring Plaintiff." (Filing 23, at 15.)

In this regard, Pawnee County has shown that the board members declined to grant Buzek an interview because: (1) Mr. Clement had received complaints from members of the community and other Pawnee County employees that they found it difficult to work with Buzek when he was employed as a deputy sheriff; (2) Mr. Stephens knew other Pawnee County employees complained about Buzek and

17

found him difficult to get along with; and (3) Ms. Laun had heard that Buzek was fired by the outgoing sheriff and was not able to get along with the dispatchers who were contracted to provide dispatching to the county. These are all legitimate, non-discriminatory reasons for rejecting Buzek's application.

"Once the employer comes forward with evidence of a reason other than retaliation for the [adverse employment action], the employee is left with the opportunity to demonstrate that the proffered reason is not the true reason for the employment decision." Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006) (internal quotations and citations omitted). The employee may demonstrate pretext by two different methods:

> First, a plaintiff may succeed indirectly by showing that the employer's proffered explanation is unworthy of credence. Under this method, the employee must rebut the employer's underlying factual claims by establishing that the employer's explanation has no basis in fact.
>
> Second, the plaintiff may prove pretext directly by persuading the court that a [prohibited] reason more likely motivated the employer. Under this method, the employee rebuts the employer's ultimate factual claim regarding the absence of retaliatory intent. The employee must demonstrate that sufficient evidence of intentional retaliation exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation.

Id. (internal quotations and citations omitted). "Both of these routes, in effect, amount to a showing that the prohibited reason, rather than the proffered reason, actually motivated the employer's action." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006).

Buzek has opted to pursue the indirect method of proving pretext, but his evidence is insufficient for this purpose because it does not show that the Pawnee County Board members are lying about the reasons they decided not to interview

18

Buzek to replace Sheriff Hickey. Buzek has shown only that he and former Sheriff Baldridge were not previously aware of any complaints from citizens or the county board regarding his performance as a deputy sheriff, that Buzek received a letter of recommendation from Sheriff Hickey after being fired, and that Buzek considered his ongoing dispute with the Johnson County dispatchers to be justified.

"[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995). Instead, this court's task is to "decide whether the record reveals issues of material fact that would prevent the entry of summary judgment in favor of [the defendant]." Stallings, 447 F.3d at 1052 (quoting Wallace, 415 F.3d at 860). In this case, no genuine issue of material fact exists.

### III. CONCLUSION

The Pawnee County Board is not a proper defendant. Buzek cannot establish a prima facie case of sex or disability discrimination. Buzek cannot prove that the reasons given by the members of the Pawnee County Board for not granting him an interview were a pretext for unlawful retaliation.

Accordingly,

IT IS ORDERED that:

1. Plaintiff's motion to strike (filing 29) is granted to the extent that Plaintiff's objections to certain paragraphs of Defendants' affidavits (filing 24, Exhibits 1, 2, and 3) have been sustained in the foregoing memorandum, but in all other respects the motion is denied.

2. Defendants' motion for summary judgment (filing 22) is granted.

3. Judgment shall be entered by separate document.

August 8, 2006.    BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge